IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL E. FAESSLER, | : | Case No. 1:05CV581 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING IN PART AND |
| | : | DENYING IN PART DEFENDANT'S |
| THE UNITED STATES PLAYING CARD | : | MOTION FOR SUMMARY |
| CO., | : | JUDGMENT |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Amended Motion to Dismiss or for Summary Judgment and supporting memorandum (doc. 11),[1] Plaintiff's response in opposition (doc. 12), and Defendant's reply (doc. 13).  For the reasons that follow, the Court treats Defendant's motion as one for summary judgment and **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

I.      **BACKGROUND**

Plaintiff Michael Faessler filed this action against Defendant United States Playing Card Company ("USPC") alleging copyright infringement and tortious interference with contract. USPC moved to dismiss Faessler's claims pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment on the claims pursuant to Fed. R. Civ. P. 56.

Faessler's claims arise out of his belief that USPC is producing playing cards that infringe upon Faessler's registered copyright for military insignia playing cards.  Faessler claims

---

[1]  Defendant's original motion to dismiss or for summary judgment was filed as Docket 8, and Defendant's memorandum in support and exhibits thereto as Docket 9.  Due to an electronic filing error, Defendant amended and refiled its motion as Docket 11.

that in 1980, while he was studying as a cadet in the U.S. Miliary Academy, he began designing a unique deck of playing cards modeled after the Military ranking system.  Faessler claims that he introduced this idea to USPC in 1987 but declined the company's offer to publish his cards, as the price quote was not economically viable.  Faessler found a different company to manufacture the cards (hereafter referred to as "Military Playing Cards") and began commercial sales of the cards in 1988.

In 1992, Faessler left active duty in order to pursue the opportunity to sell his Military Playing Cards to the Army and Air Force Exchange Services ("AAFES"), a distributor he was unable to solicit while he was on active duty because of the potential conflict of interest.  In 1994, Faessler filed for and received four registered copyrights for his Miliary Playing Cards, with styles for the Air Force, Navy, Army, and Marines, listing himself as the author and copyright claimant.  Each of the cards included a single rank insignia and an indication of the corresponding rank designation for each of the military branches beginning with the lowest rank on the "2" cards and proceeding up the ranks to the "Ace" cards. (Doc. 9 exs. D (Air Force), E (Navy), F (Army), and G (Marines)).  In 1995, Faessler sold his Military Playing Cards to approximately 200 AAFES outlets.  The following year, the AAFES entered into a contract with Faessler to distribute all four styles of the Military Playing Cards.  Faessler also sold his Military Playing Cards at other retail outlets including Navy Exchange, Ship Stores Afloat, Marine Corps Exchange, and Veterans Canteen Services.

 In 1998, one of Faessler's sales representatives informed him that USPC representatives were removing Faessler's Military Playing Cards from their designated shelf space at AAFES outlets and replacing them with USPC's own brand of playing cards.  USPC's Patriotic Playing

Cards use the same rank insignias and theme as Faessler's cards (lowest rank corresponds to lowest card and highest rank corresponds to highest card) but arrange the insignias differently and use a different cover and different Joker card artwork. (Doc. 9 e's. H (Air Force), I (Navy), J (Army), and K (Marines)).  USPC's Patriotic Playing Card line also includes a deck representing the Coast Guard.  Faessler claims that in 1999 he sent USPC a "cease and desist letter" concerning the Patriotic Playing Cards but that USPC did not respond.

Faessler continued to sell his playing cards until 2001, when he was placed back on active duty.  In 2005, he attempted to re-enter the playing card market but realized that USPC was selling its Patriotic Playing Card line at military exchanges.  Faessler filed this suit for copyright infringement and tortious interference with his contract with AAFES on September 6, 2005.

## II.    SUMMARY JUDGMENT STANDARD

USPC captioned its motion as a motion to dismiss or for summary judgment.  Because both parties have presented matters outside the pleadings, the Court will treat the motion as arising under Fed. R. Civ. P. 56.  *See* Fed. R. Civ. P. 12(b); *Granger v. Marek*, 583 F.2d 781, 785 (6th Cir. 1978).[2]

---

[2]  Pursuant to Fed. R. Civ. P. 12(b), "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Plaintiff in this case had reasonable opportunity to present material pertinent to USPC's motion and, in fact, did so when he attached to his responsive memorandum numerous exhibits and the supporting affidavit of Michael E. Faessler.  (Doc. 12 ex. 1-12.)  As such, the Court is required to proceed under Rule 56.  *See*, *e.g.*, *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 392-93 (6th Cir. 1975) (finding that if affidavits are filed with the district court, the court must proceed under Rule 56 unless the court decides to exclude the affidavits).

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law." *Id.* at 252.

Where the moving party bears the burden of proof on an issue, he must show more than the lack of a genuine issue for trial. Rather, "where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. U.S.*, 799 F.2d 254, 258-59 (6th Cir. 1986).

Although summary judgment is permissible in copyright infringement actions, the Sixth

Circuit has found that a jury's determination of whether two works are substantially similar has

"special significance":

> A jury deciding the issue of substantial similarity not only makes
> findings of historical fact, but usually also serves as a proxy for the
> works' intended audience. In this role as proxy, jurors decide not
> only what happened, but also can be properly influenced by
> whether their exposure to the alleged infringing work would
> diminish their appetite for the copyrighted work. *See Kohus*, 328
> F.3d at 856-57. As the diminished market for copyrighted work is
> the harm that the copyright law seeks to avoid, this issue is crucial
> and contains an element of subjectivity not found in most other
> jury determinations. ***Therefore, courts have recognized that
> "granting summary judgment, particularly in favor of a
> defendant, is a practice to be used sparingly in copyright
> infringement cases."***

*Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 321 (6th Cir.

2004) (quoting *Wickam v. Knoxville Int'l Energy Exposition*, 739 F.2d 1094, 1097 (6th Cir.

1984)) (emphasis added).

## III.    ANALYSIS

USPC sets forth several arguments in support of its motion. First, USPC argues that

Faessler's copyright infringement and tortious interference with contract claims are barred in

whole or in part by statutes of limitation. In a somewhat related argument, USPC contends that

Faessler's copyright infringement claims are barred by the equitable doctrine of laches because

Faessler delayed filing this action over seven years and USPC has suffered substantial prejudice.

Next, addressing the merits of Faessler's copyright infringement claims, USPC argues that: (1)

Faessler's cards failed to include the requisite copyright notice and thus entered the public

domain; and (2) there is no infringement because USPC's cards are not substantially similar to

Faessler's cards.  Finally, USPC argues that Faessler's tortious interference with contract claim fails because Faessler cannot prove that USPC intentionally procured the breach of his contract. The Court will address each of these contentions in turn.

### A.    Statute of Limitations

#### 1.    Copyright Infringement

A plaintiff must bring a civil copyright infringement claim within three years after the claim accrues.  17 U.S.C. § 507(b).  "A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994).  Because each act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was filed but does not preclude infringement claims that accrued within the statutory period.  *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004); *see also Hotaling v. Church of Jesus Christ of Latter-Day Saints,* 118 F.3d 199, 202 (4th Cir. 1997). The copyright holder's recovery in such cases is limited to acts of infringement that accrued within the limitations period.  *Roley*, 19 F.3d at 481.

Based on the three-year limitations period, USPC argues that to the extent Faessler prevails on his copyright infringement claims, he can only recover damages for sales of USPC decks after September 6, 2002, which is three years prior to the date he filed his Complaint. Faessler responds that the Court has the discretion to equitably toll the statute of limitations and that summary judgment on the issue is improper as the record is insufficiently developed on "the numerous issues which may affect [Faessler's] right to calculate damages across time."  (Doc. 12 at 15.)

6

"Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run. If the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Campbell v. Grand Trunk Western R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). USPC has demonstrated by pointing to Faessler's Complaint that Faessler knew of USPC's allegedly infringing playing cards in 1998. (Doc. 1 ¶¶ 18-19.) Faessler alleges that he sent USPC a cease and desist letter the following June. (*Id.* at ¶ 21.) Nonetheless, Faessler did not file his Complaint until September 6, 2005. Thus, USPC has meet its burden of showing that the statute of limitations bars Faessler from recovering damages for sales of USPC's playing cards after September 6, 2002. The burden thus shifts to Faessler to show that he is entitled to an exception to the statute.

The Sixth Circuit Court of Appeals has identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988). Absent congressional authority to the contrary, equitable tolling shall only be appropriate after a court has properly considered and balanced these factors. *Dunlap v. U.S.*, 250 F.3d 1001, 1008 (6th Cir. 2001). Federal courts typically extend equitable relief only sparingly. *Griffin v. Rogers*,

399 F.3d 626, 635 (6th Cir. 2005) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

In responding to USPC's motion, Faessler provided the Court with very little support to his claim of entitlement to an equitable tolling of the statute of limitations.  The fourteen-paragraph affidavit he filed in support of his opposing memorandum dedicated but one paragraph to elucidating his asserted grounds for tolling the statute: "My delay in bringing this action was caused in part by my overseas military service and severe business difficulties."  (Doc. 12 ex. 11 ¶ 11.)  The overseas military service apparently consisted of active duty with service in the U.S. Embassy at Guatemala, where Faessler served from early 2001 to September 2002.  (Doc. 1 ¶ 23.)  From the Complaint, it appears that Faessler's severe business difficulties were at least in part "due to the shrinking margins from the unfair competition by Defendant."  (*Id*. at ¶ 22.)

Faessler provides the Court with no evidence that he lacked notice or constructive knowledge of the requirement of filing his lawsuit within the mandatory limitations period.  He does not explain why he was not diligent in filing his lawsuit between 1998 when he first learned of the allegedly infringing work and 2001 when he was called back to active duty or why he did not file his lawsuit when he returned to the United States in 2002.  While the Court accepts that Faessler's delay was, in part, caused by his overseas service and business difficulties, this bare assertion, without more, is insufficient to satisfy Faessler's burden of establishing that he is entitled to an equitable tolling of the statute of limitations.  Accordingly, the Court holds that Faessler's recoverable damages for his copyright infringement claim are limited to those that occurred within three years of his commencement of this action.

**2.**      **Tortious Interference with Contract**

Faessler's state-law claim of tortious interference with contract is controlled by a four-year statute of limitations.  Ohio Rev. Code § 2305.09(D).  Ohio law dictates that the limitations period begins to run when the events giving rise to the claim occurred.  *Koury v. City of Canton*, No. 1:04-CV-02248, 2005 WL 2649883, *14 (N.D. Ohio Oct. 17, 2005) (citing *Kabealo v. Huntington Nat. Bank*, No. 94APE09-1387, 1995 WL 141064, at *3 (Ohio Ct. App. 1995)).

USPC argues that any action it took that could be perceived as interfering with Faessler's contract with AAFES occurred five or six years ago, thus Faessler's state law claim is barred.  Faessler responds that "there are serious issues, such as equitable considerations, on which almost no record has yet been adduced" and that it would therefore be premature for the Court to grant USPC's motion on statute of limitations grounds.  (Doc. 12 at 19.)

The relevant time line is established by Faessler's Complaint.  In 1998, Faessler learned that his salespeople and USPC's representatives "were in a subtle battle over shelf space in the AAFES outlets."  (Doc. 1 ¶ 18.)  Faessler sent USPC a cease and desist letter in June 1999.  (*Id.* ¶ 21.)  He did not file his Complaint until September 2005.

Once again, the Court notes that USPC has presented facts that demonstrate that the relevant statute bars the claim, and it is Faessler's burden to establish his entitlement to an exception to the statute.  Faessler has failed to meet this burden, having presented no evidence in support of his position other than his sworn statement that business difficulties and overseas service delayed his filing of the action.  Faessler cannot point to an undeveloped record as a basis for denying USPC's motion.  USPC filed its motion as a motion to dismiss or, alternatively, for summary judgment.  (Doc. 11.)  Faessler responded to USPC's motion with various matters outside the pleadings, including his own affidavit.  (Doc. 12 ex. 1-12.)  As such, the Court was

required to treat the motion as one for summary judgment.  Faessler had the opportunity to present additional facts supporting his alleged entitlement to an equitable tolling of the statute, and he did not.  Accordingly, USPC's argument that Faessler's tortious interference with contract claim is time barred is well taken.

**B.    Laches**

USPC seeks to invoke the affirmative defense of laches to limit Faessler's potential damages to those incurred after the filing of the action.  "Laches occurs when the plaintiff has delayed enforcing his rights for an unreasonable length of time and the defendant has been materially prejudiced by the delay."  *High Tymes Prods., Inc. v. PRN Prods., Inc.*, No. 1:93-CV-298, 1994 WL 16460309 at * 2 (S.D. Ohio Nov. 18, 1994) (*citing Watkins v. Northwestern Ohio Tractor Pullers Assoc., Inc.*, 630 F.2d 1155, 1159 (6th Cir. 1980)).  Laches must be determined on a case-by-case basis.  *Id.* (citing *Yellow Cab Transit Co. v. Louisville Taxicab & Transfer Co.*, 147 F.2d 407 (6th Cir. 1945)).  A successful defense of laches in this case would require that there be no material issues of fact as to whether Faessler's delay in bringing suit was unreasonable and whether USPC was prejudiced by the delay.  *See Hoste v. Radio Corp. of America*, 654 F.2d 11, 11 (6th Cir. 1981).

USPC attempts to place the burden on Faessler to demonstrate why laches should not bar the copyright claim.  (Doc. 13 at 12.)  However, as laches is an affirmative defense, the burden is USPC's, not Faessler's.  And USPC has not met its burden.  While it presents the Court with the affidavit of USPC's Associate General Counsel which states that USPC would suffer prejudice if the claim was to proceed (doc. 9 ex. Q), that alone is insufficient to convince the Court that USPC is entitled to summary judgment on the issue.  For example, to assert the equitable defense

of laches, a defendant must have clean hands; a defendant who engages in deliberate, calculated plagiarism or who acts in open and known hostility to a plaintiff's rights may not assert laches. *High Tymes Prods., Inc.*, 1994 WL 16460309 at *3. USPC has failed to adduce any evidence to affirmatively demonstrate its clean hands, an important fact issue particularly because Faessler alleges that he presented his prototype military playing cards to USPC in 1987 to solicit price quotes. Simply put, there remain too many issues of material fact for the Court to find that USPC is entitled to a laches defense.

### C.      Copyright Infringement

#### 1.      Requisite Notice

Turning now to the merits of Faessler's claim, USPC argues that Faessler has no copyright infringement claim because his military playing cards failed to display copyright notice and thus entered the public domain. Under the Copyright Act of 1976, copyright notice on a work was a prerequisite to copyright protection. 17 U.S.C. §401 (1976 version). However, Congress amended the Copyright Act in 1988 in accordance with the Berne Convention. Under the Revised Act, effective March 1, 1989, copyright notice is no longer a prerequisite to protection. 17 U.S.C. § 401.

To analyze USPC's argument, the Court must first determine the significance of the fact that Faessler first published and began selling a prototype of his Military Playing Cards between 1986 and 1988 (hereafter the "1986 Cards"). USPC argues that the 1986 Cards did not contain copyright notice and therefore entered the public domain pursuant to the Copyright Act of 1976. Faessler has a two-pronged response. First, he says that his claim against USPC is based on its alleged infringement of the copyright he holds on his Army, Navy, Air Force, and Marines

11

playing cards which did not exist until 1994 (hereafter the "Subject Works"), thus the 1976

version of the Copyright Act does not apply to the action. The 1986 Cards, which only have an

Army theme, are "markedly different" from the Subject Works, according to Faessler.[3] Second,

Faessler asserts that even if the 1976 Copyright Act applied, the 1986 Cards contained

appropriate copyright notice and were protected, thus they did not enter the public domain.

The issue of whether the 1986 Cards are in the public domain is an important first step to

the resolution of this case, even assuming that the 1994 Subject Works are the basis of Faessler's

infringement claim. When viewing allegedly infringing work, a court must ignore unprotectible

or public domain portions of the plaintiff's work. *See, e.g., Knitwaves, Inc. v. Lollytogs Ltd.*, 71

F.3d 996, 1002 (2d Cir. 1995) ("[W]here we compare products that contain both protectible and

unprotectible elements, our inspection must be 'more discerning'; we must attempt to extract the

unprotectible elements from our consideration and ask whether the protectible elements, standing

alone, are substantially similar.") Thus, if the 1986 Cards are in the public domain and

unprotectible, the Court would have to extract all common elements from any comparison

between Faessler's 1994 Subject Works and USPC's cards.

The Copyright Act of 1976 applies to the 1986 Cards as they were published prior to the

effective date of the Berne Convention. The 1976 Act required that notice of copyright be

placed on publicly distributed copies of the work. The notice was to consist of three elements:

"(1) the symbol © . . . or the word 'Copyright', or the abbreviation 'Copr.'; and (2) the year of

the first publication of the work . . .; and (3) the name of the owner of the copyright in the work. .

---

[3] USPC disputes that the 1986 Cards are markedly different from the Subject Works.
*See* comparison of the 1986 Cards, the Subject Works, and USPC's cards attached as Ex. 1 to
doc. 13.

. .” 17 U.S.C. § 401(b) (1976 Act). The Act required that the notice be affixed to the copies “in such manner and location as to give reasonable notice of the claim of copyright.” *Id.* § 401(c).

The 1986 Cards include notice consisting of the language “The Military Playing Card Co., © 1986, Ft. Myers, FL” near the bottom of each illustration on the Jokers and on the illustration of the Jokers on the card boxes. (Doc. 12 Ex. 2). The flap of the box bears the language, “We claim exclusive rights to all face designs, joker, back designs, case design, and other distinguishing characteristics of our brand of cards.” (Doc. 12 Ex. 1.) USPC does not dispute that the form of the copyright notice complies with the statute's requirements. Rather, it contends that the placement of the notice on the Jokers alone did not reasonably notify the viewer of a claim in copyright over the entire compilation of playing cards. (Doc. 13 at 13.)[4]

“The purpose of a copyright notice is to prevent innocent persons who are unaware of the existence of the copyright from incurring the penalties of infringers by making use of the copyrighted work.” *Monogram Models, Inc. v. Industro Motive Corp.*, 492 F.2d 1281, 1284-85 (6th Cir. 1974). The question, then, is whether the copyright notice included on the 1986 Cards'

---

[4] USPC also argues that under 17 U.S.C. § 403, Faessler's failure to include on his 1986 Cards a statement about the government's ownership of the rank and insignia places the work in the public domain. (Doc. 13 at 12-13.) This is an overstatement. The 1973 Act provided that “[w]henever a work is published in copies or phonorecords consisting preponderantly of one or more works of the United States Government, the notice of copyright provided by sections 401 or 402 shall also include a statement identifying, either affirmatively or negatively, those portions of the copies or phonorecords embodying any work or works protected under this title.” 17 U.S.C. § 403 (1976 Act).

Courts interpreting § 403 as revised by the 1988 amendments have held that the sole consequence of failing to provide sufficient copyright notice on government work is that an alleged infringer may mitigate his actual or statutory damages by asserting the innocent infringement defense. *See, e.g.*, *Matthew Bender & Co., Inc. v. West Pub. Co.*, 240 F.3d 116 (2d Cir. 2001). Thus, there is insufficient precedent for the Court to conclude that Faessler's omission of a statement of governmental ownership over certain elements used in his playing cards casts the entire work into the public domain.

Joker illustration, which also was included on the box cover, gave reasonable notice of Faessler's claim of copyright over all the cards in the deck. The Court finds that it did.

The Sixth Circuit has held that when a "work" protected by copyright consists of component parts, it is not necessary to place the notice on each component part. *Monogram Models, Inc.*, 492 F.2d at 1285 (holding that copyright notices on model airplane boxes and instruction sheets gave adequate copyright notice to anyone who reasonably used the kits and that it was not necessary to place a notice on each of the plastic airplane parts themselves). The Fourth Circuit Court of Appeals, interpreting *Monogram Models* and similar cases, has referred to this concept as the "unit publication doctrine" and held that the doctrine applies to protect all elements of a publication when those elements form a single commercial unit. *Koontz v. Jaffarian*, 787 F.2d 906, 909 (4th Cir. 1986). "Courts adhering to the unit publication doctrine hold that copyright notice affixed 'to one element of a publication containing various elements gives copyright protection to all elements of the publication.'" *Id.* (quoting *Koontz v. Jaffarian*, 617 F. Supp. 1108, 1112 (E.D. Va. 1985)).

In this case, Faessler placed copyright notice on the Jokers contained within the deck of cards, and the same Joker illustration with copyright notice was on the card box. A box of cards is a single commercial unit; one would not, and could not, purchase the Joker alone. Furthermore, the flap of the box containing the 1986 Cards unequivocally stated a claim of exclusive rights to all face designs, joker, back designs, case design. The application of the unit publication doctrine to the 1986 Cards is fair under the circumstances, and the Court concludes that the copyright notice displayed on the Joker and on the card box was sufficient to provide

copyright protection to the entire compilation of 1986 Cards.  Therefore, the Court cannot grant summary judgment to USPC on the basis that Faessler's work entered the public domain.

## 2.    Substantial Similarity

In order to establish a claim of copyright infringement, a plaintiff must show that he or she owns a copyrighted work and that the defendant copied it.  *See Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003).  However, in most cases, there is no objective evidence of copying, so courts "are forced to rely on the inferences which may be drawn from two basic facts: access and similarity."  *Murray Hill Publ'ns, Inc.*, 361 F.3d at 316 (quoting *Glanzman v. King*, 8 U.S.P.Q.2d 1594, 1595 (E.D. Mich. 1988)).  In other words, "copying is an essential element of infringement and substantial similarity between the plaintiff's and defendants' work is an essential element of copying."  *Id*. (quoting *Wickam*, 739 F.2d at 1097).

The Sixth Circuit has adopted a two-step approach for substantial similarity.  *Kohus*, 328 F.3d 848.  The first step is to "filter out the unoriginal, unprotectible elements–elements that were not independently created by the inventor, and that possess no minimal degree of creativity."  *Id*. at 855.  Once the unprotectible elements have been filtered out, the second step is to determine whether the allegedly infringing work is substantially similar to the protectible elements of the original.  *Id*.  This requires the trier of fact to determine substantial similarity from the perspective of the work's target audience.  *Id*. at 857.  USPC makes numerous arguments designed to undercut Faessler's claim that USPC's Patriotic Playing Cards are substantially similar to his Military Playing Cards.

### a.  Idea Versus Expression and the Merger Doctrine

Two of USPC's arguments against Faessler are closely related, and the Court will consider them simultaneously.  First, USPC argues that the "idea" of making playing cards containing rank insignia for different branches of the military is not protectible.  Second, USPC argues that there is essentially only one way of assigning insignia to playing cards, and because the idea and the expression of the idea "merge," Faessler's expression of the idea is not protectible.  Faessler, in response, asserts that he is not seeking protection of the "idea" of using military insignia as a card design but rather his particular "expression" of military-theme playing cards.  He further asserts that there is no merger of idea and expression in the Subject Works because there are many military themes and, even assuming a military *insignia* theme, there are a number of possible arrangements of insignia to correspond to a card's value.

USPC is correct that Faessler's idea of making playing cards that use military rank insignia is not protectible.  "Ideas ...as distinguished from the particular manner in which they are expressed or described in a writing," are not subject to copyright protection.  37 C.F.R. § 202.1(b).  Furthermore, when an idea and its expression are inseparable, "copying the 'expression' will not be barred, since protecting the 'expression' in such circumstances would confer a monopoly of the 'idea' upon the copyright owner."  *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738, 742 (9th Cir. 1971) (holding that the defendant was not barred from copying the expression of plaintiff's copyrighted bee pin when the idea of the bee and its expression were indistinguishable).  In cases that involve functional rather than creative objects, a court must eliminate those elements dictated by efficiency.  *Kohus*, 328 F.3d at 856.  "To this end, the merger doctrine establishes that '[w]hen there is essentially only one way to express an

16

idea, the idea and its expression are inseparable [i.e., they merge,] and copyright is no bar to copying that expression.'" *Id.* (quoting *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606 (1st Cir. 1988)); *see also Tastefully Simple, Inc. v. Two Sisters Gourmet, L.L.C.*, 134 F. App'x 1, *5 (6th Cir. 2005) (unpublished) (finding that a form listing the states, their tax department information, and their sales tax rates was not subject to copyright protection in part because of the merger doctrine, "for the only way to inform someone of the respective states' sales tax rates and their taxing department names and addresses is to actually list the information.").

The Court does not find that the *idea* of military-themed playing cards and Faessler's *expression* of that idea in his Subject Works are inseparable. As Faessler points out in his opposition memorandum, there are a myriad of military themes that could be, and have been, applied to playing cards: different wars, devices of the military such as aircraft or armaments, military flags, war heroes, etcetera. Thus, Faessler's particular expression of military-themed playing cards–using military rank insignia in a particular arrangement, a labeling of those ranks, and camouflage card backs–required a choice among several alternatives. Unlike the form at issue in *Tastefully Simple*, the Subject Works are not mere lists of facts.

To take the argument a level further, even if the *idea* in this case is not military-themed playing cards in general but rather military insignia-themed playing cards, there is arguably at least a modicum of creativity and originality in Faessler's selection and arrangement of the insignia as well as his choice of image on the card backs and packages. Even factual compilations may possess a level of originality sufficient to entitle them to copyright protection:

> The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data....

17

> These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws.

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991).

USPC suggests that given the structure of playing cards from lowest to highest card and the nature of the ranking system from lowest to highest rank, there is only one way of assigning insignia to playing cards.  In contradiction to this suggestion, however, USPC asserts that its military insignia playing cards differ from Faessler's: "[Faessler's] and USPC's use of ranks are not identical in that they sometimes skip different ranks and their face cards are generally designated differently."  (*See* doc. 9 ex. P at 11-14 demonstrating the available military ranks and which of those ranks are associated with Faessler's and USPC's playing cards.)  Thus, USPC concedes that the decision of which rank to assign to which card, while limited, is not foregone.

Beyond the choice of rank is the choice of insignia style or design.  As Faessler points out, insignia come in several designs.  There are at least four different renditions of U.S. military rank: they may be rendered in either cloth or pin-on style, and each of these styles may be rendered in either a regular (also called "brass") or subdued style. (Doc. 12 at 10.)  Faessler, and USPC, selected cloth ranks for all enlisted rank cards and pin-ons for all officer rank cards.

Assuming for the purpose of deciding USPC's motion that Faessler's "idea" is military rank insignia themed playing cards, the Court finds that there is more than one way to express the idea.  Accordingly, the Subject Works are entitled to copyright protection, and the merger doctrine does not apply to give USPC the right to copy Faessler's expression of the idea.

### b.  Public Domain Elements

18

USPC next argues that the majority of the elements found in Faessler's Subject Works are in the public domain and thus not protectible. For example, familiar symbols and designs are not protected by copyright. 37 C.F.R. § 202.1(a). Additionally, copyright protection is not available "for any work of the United States government," which USPC argues includes "military elements." 17 U.S.C. § 105 (2005). Faessler responds that he is not asserting ownership of the design of the military rank insignias but rather of his creative selection of the insignias. Further, argues Faessler, there is no bar to copyright for original works that incorporate public-domain or government-created elements. Indeed, "a work may be protected by copyright even though it is based on something already in the public domain if the author ... has contributed a distinguishable variation [to it]." *Tastefully Simple, Inc.*, 134 F. App'x at *6 (quoting *Ribbon & Trimming, Inc., v. Little*, 51 F.3d 45, 47 (5th Cir. 1995)).

USPC's argument that public domain elements must be filtered out before comparing two works for potential infringement is well-taken. The playing card suit symbols (hearts, clubs, diamonds, and spades), numerals, rank insignia, and rank designations are in the public domain.[5] Accordingly, those elements are not subject to copyright protection, and the Court must filter them out prior to determining whether the allegedly infringing playing cards are substantially similar to Faessler's Subject Works. However, as discussed in the preceding section, there are several different military rank insignia and styles of insignia. The Court's finding that the

_____

[5] The Court does not agree with USPC that camouflage is a public domain element. Creation of a camouflage pattern involves the selection of colors and shapes to achieve a camouflage effect in a certain environment. As Faessler notes, "[t]here are hundreds of camouflage patterns in existence, and even a fairly large number of official military patterns." (Doc. 12 at 12.)

19

Subject Works contain public domain elements that must be filtered does not necessitate a

conclusion that Faessler's selection and arrangement of these elements is not protectible.

### c. Scenes à faire

USPC asserts that military emblems and camouflage are scenes à faire, that is, elements

that follow naturally from the work's theme, and accordingly must be filtered out prior to

comparing USPC's playing cards to the Subject Works. Faessler responds that these elements

are not subject to filtering because the possible motifs for military themed playing cards are great

and insignia, camouflage, and emblems are inessential to a military themed card.[6]

"The principle of scenes à faire excludes copyright protection for 'incidents, characters or

settings which are as a practical matter indispensable, or at least standard, in the treatment of a

given topic.'" *Stromback v. New Line Cinema*, 384 F.3d 283, 296 (6th Cir. 2004) (quoting *Atari,*

*Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982)). Stated

otherwise, "when external factors constrain the choice of expressive vehicle, the doctrine of

'scenes à faire'–'scenes,' in other words, 'that must be done'–precludes copyright protection."

*Lexmark Intern., Inc. v. Static Control Components*, 387 F.3d 522, 535 (6th Cir. 2004). The

doctrine applies, for example, to deny copyright protection to literary works consisting of

familiar themes that are staples of literature, such as "saving the world, the battle between good

and evil, sibling rivalry or familial secrets and issues, and racial issues.... These elements are too

general to qualify for copyright protection." *Stromback*, 384 F.3d at 297 (citations omitted).

---

[6] In the documents filed with the Court, USPC characterizes the Subject Works as
"military rank insignia" playing cards while Faessler refers to them as "military themed" playing
cards. Obviously, a military rank insignia theme is narrower than a military theme. However,
the Court is not compelled to decide which theme characterization is correct. Even assuming
that the narrower theme applies, the Court concludes that the Subject Works are entitled to
copyright protection for the reasons specified in the body of this Order.

Faessler's Subject Works are military playing cards.  Certainly the elements he has chosen to portray his theme are incidents to the military: insignia, camouflage, and emblems.  However, the Court cannot conclude that these particular elements are so generally presumed to accompany military playing cards that they are susceptible to being screened as scenes à faire.  Faessler directs the Court to numerous examples that aptly demonstrate the variety of ways in which a military themed playing card might be portrayed.  (See doc. 12 ex. 3.)  For example, military playing cards may employ flags, armaments, or illustrations of battleships or aircraft as a basis for the design of card backs and boxes.  Unlike the case of *Winfield Collection, Ltd. v. Gemmy Ind., Corp.*, 147 F. App'x 547 (6th Cir. 2005), in which the court found that elements such as a flowing cape, curled boots, black clothing, and a broom were scenes à faire for a witch, this case does not present a subject work that is as susceptible to distillation into requisite components.  A witch is not a witch without a broom and flowing cape.  However, a military playing card is certainly a military playing card absent camouflage and military emblems.

Even if one construes the theme of Faessler's cards as the narrower one of military insignia, a variety of possible elements remain to decorate card backs and boxes.  Indeed, USPC's own Navy style Patriotic Playing Cards demonstrates the point: while Faessler's Navy cards have a camouflage back, USPC's have a water-inspired back.  The Court thus will not apply the scenes à faire doctrine to filter out the camouflage and military emblems from Faessler's Subject Works.

### d. Filtering

After a court has filtered out a work's unprotected elements, the trier of fact must determine whether the allegedly infringing work is substantially similar to the protectible elements of the original.  *See Kohus*, 328 F.3d at 856.  Where a lay audience purchases the product at issue, the test is whether the works are substantially similar based on the judgment of the ordinary reasonable person.  *Id*.  USPC argues that, after filtering out the unprotected elements of the Subject Works, its Patriotic Playing Cards are "substantially different" from Faessler's works.

The Court has found that neither the merger doctrine nor scenes à faire strip away the Subject Works' elements.  Thus, all that must be filtered from the Subject Works are the public domain elements of numerals, symbols, and military insignias.  Like facts, these elements cannot be copyrighted.  However, even "[a] factual compilation is eligible for copyright protection if it features an original selection or arrangement of facts."  *Feist Publ'ns, Inc.*, 499 U.S. at 350.  In such cases, "the copyright is limited to the particular selection or arrangement."  *Id*.  at 350-51.

As applied to this case, Faessler has a valid copyright in his particular selection and arrangement of the public domain elements of numerals, symbols, and insignia, but not to those elements themselves.  Indeed, USPC is entitled to use those same elements "so long as the competing work does not feature the same selection and arrangement."  *Id*. at 349.  Faessler also has a valid copyright in his selection of camouflage and military emblems used on the card backs and boxes.

USPC directs this Court to case law holding that where the selection and arrangement of facts is claimed, substantial similarity must amount to "a verbatim reproduction or very close

paraphrasing." *The Pampered Chef, Ltd. v. Magic Kitchen, Inc.*, 12 F. Supp. 2d 785, 792 (N.D. Ill. 1998); see also *Ross, Brovins & Oehmke, P.C. v. Lexis/Nexis*, 348 F. Supp. 2d 845, 860 (E.D. Mich. 2004) (comparing compilations of automated legal forms); *Tastefully Simple, Inc.*, 134 F. App'x 1 at *5 (comparing spreadsheets and checklists); *Kregos v. Associated Press*, 3 F.3d 656, 663 (2d Cir. 1993) (comparing compilations of baseball statistics).  Unlike in those cases, the Subject Works are not lists of factual information or blank forms.  Rather, they are playing cards which meld both functional and creative elements.  Furthermore, the unprotectible elements at issue here–rank insignia and symbols–are capable of being rendered in varying styles, and there are enough ranks available that the insignia could be selected and arranged in more than one logical way. The law cited by USPC in which courts granted summary judgment to defendants on grounds that their compilations of factual material were not substantially similar to the copyrighted work are not sufficiently on point to warrant the same conclusion here.  The Court is mindful of the fact that "[i]n copyright infringement cases, 'granting summary judgment, particularly in favor of a defendant, is a practice to be used sparingly.'" *Kohus*, 328 F.3d at 853. Particularly in the context of playing cards, where the lay audience is the intended consumer, the Court cannot conclude that a reasonable jury could not find that the two works are substantially similar.

### D.    Tortious Interference with Contract

As previously discussed, Faessler's tortious interference with contract claim is barred by Ohio Revised Code § 2305.09(D).  The Court thus declines to consider the claim on its merits.

**IV.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment.  The Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's Second Claim for Relief and **DENIES** it as to Plaintiff's First Claim for Relief.  Consistent with this opinion, in the event Plaintiff is entitled to recovery, it shall be limited to any acts of infringement by Defendant that occurred after September 6, 2002.

IT IS SO ORDERED.


_____s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge